ORIGINAL

# In the United States Court of Federal Claims

**Nos. 15-1200; 15-1501**
**Filed: May 27, 2016**

**FILED**

**MAY 2 7 2016**

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * *   *
                                *
JULIAN R. HOOD, JR.,            *
                                *
                Plaintiff,      *
                                *
        v.                      *
                                *
UNITED STATES,                  *
                                *
                Defendant.      *
                                *
* * * * * * * * * * * * * * *   *
```

**Pro Se Plaintiff; In Forma Pauperis;**
**Motion to Dismiss; 28 U.S.C. § 1500;**
**RCFC 11 Sanctions; 28 U.S.C. § 2501.**

Julian R. Hood, pro se, Escondido, CA.

**Daniel K. Greene**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant (Case Number 15-1200). **Amanda L. Tantum**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant (Case Number 15-1501). Also with them were **Martin F. Hockey, Jr.**, Assistant Director, **Reginald T. Blades**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, Washington, D.C.

## OPINION

**HORN, J.**

### FINDINGS OF FACT

This case addresses Case Number 15-1501 and Case Number 15-1200 filed by pro se plaintiff Julian R. Hood in the United States Court of Federal Claims. Mr. Hood filed his complaint in Case Number 15-1200 on October 15, 2015. Less than two months later, on December 11, 2015, Mr. Hood filed a second, similar complaint in Case Number 15-1501, which appears to arise from the same set of facts as Case Number 15-1200. In fact, Mr. Hood has filed multiple, often defective, complaints[1] in this court and in other federal courts.

---

[1] Plaintiff previously filed a complaint in the United States Court of Federal Claims, Case Number 15-1158, which was dismissed after plaintiff failed to pay the filing fee. See Hood v. United States, 1:15-cv-01158 (Fed. Cl. Feb. 26, 2016). Plaintiff also has filed at least

sixteen other complaints in federal courts. For example, between 2014 and 2015, Mr. Hood filed numerous complaints in the United States District Court for the Western District of Michigan. The following actions are no longer pending: Hood v. United States, 1:15-cv-02193 (D.D.C. May 6, 2016) (transferred to the United Stated District Court for the Western District of Michigan); Hood v. Office of Personnel Mgmt., 1:15-cv-00418 (W.D. Mich. July 20, 2015) (plaintiff's claim that the Office of Personnel Management wrongfully denied him life insurance benefits was dismissed as unnecessarily duplicative of case No. 1:15-cv-609); Hood v. United States Postal Serv., 1:14-cv-01104 (W.D. Mich. July 10, 2015) (plaintiff's claims of violation of the Rehabilitation Act of 1973 were barred by the Settlement Agreement and subject to dismissal as untimely and for failure to exhaust administrative remedies); Hood v. Donahoe, 1:14-cv-01180 (W.D. Mich. July 10, 2015) (plaintiff's claims of employment discrimination and retaliation were barred by the Settlement Agreement because 42 U.S.C. § 1983 claims may not be brought against federal agencies, and for failure to state a claim upon which relief may be granted); Hood v. Donahoe, 1:14-cv-01181 (W.D. Mich. July 10, 2015) (plaintiff's claims of violation of his equal protection and due process rights were barred by the Settlement Agreement and because 42 U.S.C. § 1983 claims may not be brought against federal agencies); Hood v. Donahoe, 1:14-cv-01182 (W.D. Mich. July 10, 2015) (Mr. Hood's claims of race discrimination were barred by the Settlement Agreement and subject to dismissal for lack of judicial remedy under 42 U.S.C. § 1981 and for failure to timely exhaust claims); Hood v. Donahoe, 1:14-cv-01183 (W.D. Mich. July 10, 2015) (plaintiff's claims of disability discrimination were barred by the Settlement Agreement and subject to dismissal for lack of timely exhaustion); Hood v. Donahoe, 1:14-cv-01195 (W.D. Mich. July 10, 2015) (plaintiff's claims of Title VII employment discrimination were barred by the Settlement Agreement and subject to dismissal for lack of timely exhaustion); Hood v. United States Postal Serv., 1:15-cv-00436 (W.D. Mich. May 28, 2015) (plaintiff's claims of conspiracy to commit fraud between the United States Postal Service and Michigan Postal Workers Union Area Local #281, breach of American Postal Workers Union's duty of fair representation, and legal malpractice and fraud by the USPS attorney were dismissed as untimely and because Mr. Hood failed to allege the conspiracy claims with specificity); Hood v. United States Postal Serv., 1:15-cv-00434 (W.D. Mich. May 15, 2015) (plaintiff's claim of violation of the Family Medical Leave Act, 29 U.S.C. § 2601, was barred by the statute of limitations); Hood v. United States Postal Serv., 1:15-cv-00435 (W.D. Mich. May 15, 2015) (plaintiff's claims that the United States Postal Service violated the collective bargaining agreement and that the Defendant Union breached its duty of fair representation were time barred). Plaintiff also appears to have active cases pending in multiple jurisdictions, including: Hood v. United States, 1:15-cv-01278 (W.D. Mich. filed Dec. 10, 2015); Hood v. United States, 1:15-cv-01279 (W.D. Mich. filed Dec. 10, 2015); Hood v. United States, 1:15-cv-01247 (W.D. Mich. filed Nov. 30, 2015); Hood v. Office of Personnel Mgmt., 1:15-cv-00609 (W.D. Mich. filed June 10, 2015). Another case filed by Mr. Hood was transferred from the United States District Court for the Southern District of New York, Hood v. United States, 1:16-cv-01150 (S.D.N.Y. May 12, 2016), to this court and assigned to the undersigned on May 12, 2016. See Hood v. United States, 1:16-cv-00570 (May 12, 2016). As of this date, no transfer amended complaint has been filed by Mr. Hood pursuant to Rule 3.1(a)(4) of the Rules of the United States Court of Federal

According to plaintiff's complaints, he appears to have been hired by the United States Postal Service (USPS) as a mail processing clerk on October 23, 1999. Plaintiff alleges that, during his employment with the USPS, he suffered from numerous medical disabilities, including post-traumatic stress disorder (PTSD), depression, and anxiety, which, according to plaintiff, required occupational accommodations in the form of time off, hours restrictions, and work-site preferences. Plaintiff and the USPS struggled to reach a consensus employment arrangement that would accommodate plaintiff's alleged conditions. Ultimately the USPS issued Mr. Hood a notice of removal in August 2003 for attendance-related issues. On April 21, 2004, the USPS removed Mr. Hood from employment.

According to the filings before the court, on November 18, 2005, plaintiff entered into a Settlement Agreement with the USPS in which Mr. Hood waived his rights to all claims, including employment discrimination claims, against the USPS, with the exception of Mr. Hood's then-pending claim under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101-8193 (2012). In return, the USPS agreed to change the description of Mr. Hood's discontinuation of employment from "termination" to "resignation" on the Standard Form 50 (SF-50) Notification of Personnel Action contained in Mr. Hood's personnel file. The USPS also agreed to pay Mr. Hood compensatory damages and attorney's fees. The USPS claims to have fulfilled its obligations under the Settlement Agreement by making all necessary payments to Mr. Hood. Defendant asserts that, on December 15, 2005, the defendant changed Mr. Hood's SF-50 to state that he had "resigned his position effective 04-21-04." Plaintiff's complaints in Case Number 15-1200 and Case Number 15-1501 allege that defendant committed various breaches of the Settlement Agreement between Mr. Hood and the USPS.

### Case Number 15-1200[2]

In Case Number 15-1200, plaintiff makes several, not always clear, allegations, including: "breach of express contract and implied in fact contract," breach of "the covenant good faith and fair dealings," "misrepresentation and fraudulent concealment," and "conspiracy."[3] Plaintiff alleges that between 2006 and 2008, the USPS breached the Settlement Agreement on at least three separate occasions by stating that Mr. Hood's employment ended as the result of termination, rather than as a voluntary resignation. Specifically, plaintiff alleges that on August 28, 2006, USPS Injury Compensation Office employee, Lee Bosch, represented on a Department of Labor Form CA-7, Claim for

---

Claims (RCFC) (2016), and the case is not yet properly before the court. Therefore, this opinion only addresses Case Numbers 15-1501 and 15-1200.

[2] Plaintiff filed a complaint, an amended complaint, and a second amended complaint in Case Number 15-1200. The allegations discussed herein are comprehensive of plaintiff's multiple complaints.

[3] Capitalization, grammar, punctuation, and other errors quoted in this opinion are as they appear in plaintiff's submissions.

Compensation (CA-7), that Mr. Hood had been terminated on April 21, 2004. Plaintiff alleges that on September 12, 2006, Mr. Bosch again stated that Mr. Hood had been terminated. Plaintiff further alleges that USPS Health and Resource Management Specialist Theresa Miller sent the Department of Labor Office of Workers' Compensation Program a Department of Labor CA-7a Time Analysis Form (CA-7a) "stat[ing] that I was terminated from employment 173 times on September 8, 2008 well after the settlement agreement."

Plaintiff alleges that defendant breached the implied covenant of good faith and fair dealing contained in the Settlement Agreement. Plaintiff also alleges that by agreeing to withdraw his Equal Employment Opportunity Commission (EEOC) complaint and any potential, future complaints in exchange for the USPS changing his removal status to resignation, an implied in fact contract was created between himself and the USPS. Plaintiff alleges that the USPS breached the implied-in-fact contract and the covenant of good faith and fair dealing by failing to change his SF-50 reporting his discontinuation of employment status from termination to resignation and by publicly conveying that he had been terminated after the Settlement Agreement was signed.

Plaintiff further alleges that the USPS violated his First Amendment right to freedom of speech by terminating his employment in response to plaintiff filing a complaint with the EEOC "protesting discrimination and abuse in regards to my employment." Plaintiff also alleges that the USPS denied him equal protection and due process when his employment was terminated, because the decision was "arbitrary, capricious, without factual support and contrary to law." According to plaintiff, when the USPS terminated his employment, plaintiff suffered "great physical and mental pain and anguish" and "severe permanent economic injury."

Moreover, plaintiff alleges that, between 2001 and 2004, the USPS fraudulently concealed relevant information pertaining to plaintiff's qualification for protection under the Family and Medical Leave Act of 1993 (FMLA) and deliberately mislead an FMLA investigator, resulting in denial of FMLA coverage to plaintiff. Plaintiff alleges that, as a result of his being denied FMLA benefits, the Settlement Agreement was entered into as "the result of duress, undue influence, and bad faith on the part of the agency." Similarly, plaintiff alleges that the USPS fraudulently concealed his FECA claim by negligently processing his United States Department of Labor Office of Workers' Compensation Program (OWCP) documents and improperly representing plaintiff's removal status as terminated on the OWCP documents.

In addition, plaintiff alleges that "[t]he agency entered into a conspiracy with the Union and my attorney, who was a US Postal Service attorney, the year prior to accepting my case." Plaintiff alleges that the Union intentionally provided inadequate legal representation and that his attorney's social relationship with the USPS attorney was improper.

In his complaint in Case Number 15-1200, plaintiff alleges that in this court jurisdiction is proper pursuant to 28 U.S.C. § 1491 because the "action is within the Tucker

Act jurisdiction of the Court of Federal Claims," and because the amount in controversy exceeds $10,000.

Defendant filed a motion to dismiss Case Number 15-1200, asserting that this court lacks jurisdiction to hear plaintiff's claims, that plaintiff's contract claims are time-barred by 28 U.S.C. § 2501 (2012), and that plaintiff has failed to state a claim upon which relief may be granted.

Case Number 15-501

On December 11, 2015, plaintiff filed a second and separate complaint in this court, Case Number 15-1501, alleging a "regulatory and physical taking of private property," "violations of Plaintiffs Fifth and Fourteenth Amendment rights," a breach of "Common Law Promissory Estoppel / Quasi contract," "denial of equal protection and due process of laws," "breach of promise to accommodate," and "breach of implied covenant of good faith and fair dealing for failure to provide equal protection in the workplace" by the USPS.

In Case Number 15-1501, plaintiff alleges a regulatory taking because, according to plaintiff, in April 2004, the USPS violated its "statutory and contractual requirement's imposed by the Family Medical Leave Act ('FMLA') of 1993, Federal Employee's Compensation Act ('FECA'), and the CBA [Collective Bargaining Agreement]" by accelerating "Plaintiffs wrongful termination in an effort to deprive him of his rights to life, liberty, and property (Job) to reissue it to the public." Plaintiff also alleges that defendant committed a physical taking in April 2004, "[b]y confiscating, depriving, and wrongfully terminating Plaintiffs employment, Defendant has taken Plaintiff's private property for public use without just compensation, in violation of the Fifth Amendment to the Constitution of the United States."

Plaintiff further alleges that he was "denied due process of the law" as a consequence of the USPS'

intentional and willful omissions, concealment of facts, misrepresentations, and fraud upon the U.S. Department of Labor ("US DOL") Wage and Hour Division (WHD) and Office of Workers' Compensation Program (OWCP), and the U.S. Equal Employment Opportunity Commission (US EEOC) whom responsibilities are to adjudicate administrative claims.

Plaintiff continues by alleging that the USPS concealed the existence of his claims and key information relating to his health from the investigators for the Department of Labor and EEOC when in 2004, and again from 2006 to 2008, the USPS delayed processing of his Form CA-7. Plaintiff also alleges that the USPS "did not offer [plaintiff] equal protection," because he was denied "a fair procedural process." As proof, plaintiff compares his treatment with the treatment of two other USPS employees, who, allegedly, worked in the same position, in the same department, and with the same supervisors as plaintiff, yet, allegedly, were treated more fairly regarding disabilities and absences from

work. Plaintiff alleges that "sex (male), color (black), and race (African-American)," as well as his decision to file his EEOC complaint and FECA claim, motivated USPS to treat him less fairly.

Plaintiff alleges that his "rights under the CBA were expressed and implied," and that his reasonable expectation to receive the rights and benefits of the CBA was denied when the USPS "breached the CBA [CBA] and their fiduciary duties owed to Plaintiff by acting in bad faith according to § 205 of the Restatement (Second) of Contracts." Plaintiff alleges that the USPS "breached the collective bargaining agreement when the agency failed to offer reasonable accommodate Plaintiffs injury" through denial of time-off and failing to transfer his work location and restrict his work schedule. Plaintiff alleges that the CBA contained "an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Plaintiff also alleges that he was falsely induced to join the USPS "on the basis of retirement plans and other conduct which led him to believe that his job with the [USPS] was permanent barring misconduct or financial downturn."

In his complaint in Case Number 15-1501, plaintiff alleges that jurisdiction is proper pursuant to 28 U.S.C. § 1491 and because "[t]he proceeds from any of the claims are greater than $10,000." Plaintiff also alleges that "[s]upplemental [j]urisdiction is proper under "28 U.S.C. § 1367."[4] In Case Number 15-1501, defendant also has filed a motion

---

[4] The statute at 28 U.S.C. § 1367 states:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

to dismiss, asserting that plaintiff's claims are barred by 28 U.S.C. § 1500 (2012), are outside the statute of limitations, that this court lacks jurisdiction to hear certain of plaintiff's claims, and that plaintiff has failed to state a claim upon which relief may be granted.

As relief, in Case Number 15-1200 and Case Number 15-1501, plaintiff seeks a judgment from this court granting him relief, including the following: "Reinstatement in connection with the termination of Plaintiffs employment with back pay and interest, front pay if reinstatement is unavailable, loss benefits, and promotion;" "For general and compensatory damages according to proof;" "For special damages according to proof;" "For personal property damages according to proof;" "For pre-judgment and post-judgment interest as allowed by law;" "For costs of suit incurred herein;" to "rescind or set aside the November 18, 2005 settlement agreement;" "remand my administrative complaint with the U.S. Merit System Protection Board;" and to "grant any monetary damages or awards the Court deems appropriate."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir. 2015), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(a–c) (2012); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 506 n. 5 (2006). As noted by another Judge of the Court of Federal Claims, "28 U.S.C. § 1367 does not confer any jurisdiction upon the United States Court of Federal Claims because only the United States District Courts are authorized to exercise supplemental jurisdiction." Hall v. United States, 69 Fed. Cl. 51, 57 (2005); see also Trek Leasing, Inc. v. United States, 62 Fed. Cl. 673, 678 (2004) (indicating 28 U.S.C. § 1367 "only applies specifically to federal district courts."). Therefore, this court cannot exercise supplemental jurisdiction over any of plaintiff's claims.

out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)). Plaintiff has also filed applications to proceed in forma pauperis in Case Number 15-1200 and Case Number 15-1501. For the reasons discussed below, plaintiff's applications to proceed in forma pauperis in Case Number 15-1501 and Case Number 15-1200 are deemed moot.

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. at 514 (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of

litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2015); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). However, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S.

> [392,] 401-02 [1976] ("Where the United States is the defendant and the
> plaintiff is not suing for money improperly exacted or retained, the basis of
> the federal claim-whether it be the Constitution, a statute, or a regulation-
> does not create a cause of action for money damages unless, as the Court
> of Claims has stated, that basis 'in itself . . . can fairly be interpreted as
> mandating compensation by the Federal Government for the damage
> sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is
> commonly referred to as claims brought under a "money-mandating"
> statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004);
see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must
demonstrate that an independent source of substantive law relied upon "'can fairly be
interpreted as mandating compensation by the Federal Government.'" United States v.
Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400
(1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United
States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374,
1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting
monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo
Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply
a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims
premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not
money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal
should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed.
Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v.
United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir.
2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under
the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

As a threshold issue, defendant argues that plaintiff's Case Number 15-1501 is
barred under 28 U.S.C. § 1500 because plaintiff had a pending matter in another federal
court when he filed his complaint in Case Number 15-1501 in this court on December 11,
2015. In its motion to dismiss, defendant alleges that Hood v. United States Postal
Service, 1:14-cv-01104 (W.D. Mich. July 10, 2015), is currently pending on appeal, and
is largely based on the same subject matter and raises the same issues as Case Number
15-1501. Defendant argues that, even if it could be determined that plaintiff has submitted
a claim under a money-mandating statute and has otherwise complied with the
jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491, subject matter jurisdiction,
nevertheless, would be barred by 28 U.S.C. § 1500. The statute at 28 U.S.C. § 1500
provides:

> The United States Court of Federal Claims shall not have jurisdiction of any
> claim for or in respect to which the plaintiff or his assignee has pending in
> any other court any suit or process against the United States or any person

who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.  The application of section 1500 turns on whether plaintiff had pending, at the time he filed suit in the Court of Federal Claims, a suit in another court against the United States or a person acting under authority of the United States, based on substantially the same operative facts as the suit filed in this court, regardless of the relief sought.  See United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011). "The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action." Loveladies Harbor, Inc. v. United States,  27 F.3d 1545, 1548 (Fed. Cir. 1994) (discussing the Supreme Court's opinion in Keene Corp. v. United States, 508 U.S. 200 (1993)).  Indeed, "'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" Keene Corp. v. United States, 508 U.S. at 207 (quoting Mollan v. Torrance, 22 U.S. 537, 539 (1824) (Marshall, C.J.) (other citations omitted) (noting that the Court of Federal Claims correctly applied section 1500 by "looking to the facts existing when Keene filed each of its complaints."). When a district court has entered judgment dismissing a case, the   United   States   Court   of Appeals for the Federal Circuit has established that once "a notice of appeal is filed," then the  case is "pending" under 28 U.S.C. § 1500. Brandt v. United States, 710 F.3d 1369, 1380 (Fed. Cir. 2013).

The United States Supreme Court offered some clarification regarding the effect of 28 U.S.C. § 1500 in Tohono O'Odham Nation. In the words of the United States Supreme Court, section 1500 "bars jurisdiction in the CFC [Court of Federal Claims] not only if the plaintiff sues on an identical claim elsewhere – a suit 'for' the same claim – but also if the plaintiff's other action is related although not identical – a suit 'in respect to' the same claim." United States v. Tohono O'Odham Nation, 563 U.S. at 312. The Supreme Court explained, "two suits are for or in respect to the same claim when they are based on substantially the same operative facts." Id. at 318 (citing Keene Corp. v. United States, 508 U.S. 200, 206 (1993)).

There is, however, no set test to determine when, according to the Supreme Court, "two suits have sufficient factual overlap to trigger the jurisdictional bar." United States v. Tohono O'Odham Nation, 563 U.S. at 318. Although the assessment must be on a case by case factual basis, the Tohono O'Odham Nation case provides a general framework for consideration. In its decision, the Supreme Court stated in Tohono O'Odham Nation:

The remaining question is whether the Nation's two suits have sufficient factual overlap to trigger the jurisdictional bar.  The CFC [United States Court of Federal Claims] dismissed the action here in part because it concluded that the facts in the Nation's two suits were, "for all practical purposes, identical." 79 Fed. Cl. 645, 656 (2007).  It was correct to do so. The two actions both allege that the United States holds the same assets in trust for the Nation's benefit.  They describe almost identical breaches of

12

fiduciary duty – that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect. Under § 1500, the substantial overlap in operative facts between the Nation's District Court and CFC suits precludes jurisdiction in the CFC.

Id. at 317.

In this court, plaintiff filed his complaint in Case Number 15-1501 against the United States on December 11, 2015. Plaintiff earlier had filed Case Number 1:14-cv-01104, against the USPS in the Western District of Michigan on October 24, 2014. See Hood v. USPS, No. 14-1104. Case number 14-1104 in the district court was subsequently dismissed on July 10, 2015 because plaintiff's claims were found to be barred by the Settlement Agreement, untimely, and evidenced a failure to exhaust administrative remedies. See id. On August 12, 2015, plaintiff filed an appeal of the district court's decision in Case Number 14-1104 in the United States Court of Appeals for the Sixth Circuit, Hood v. United States, Case No. 1:15-1937 (6th Cir. 2015). As of December 11, 2015, the date that Case Number 15-1501 was filed in the United States Court of Federal Claims, Case Number 15-1937 in the Sixth Circuit, was pending, and is still pending at the time of issuing this decision. Therefore, in both this court and in the Sixth Circuit, plaintiff has pending concurrent suits against the United States or a person acting under authority of the United States. See United States v. Tohono O'Odham Nation, 563 U.S. at 311. Because "[t]he question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed," and Case Number 15-1937 was pending on appeal in the Sixth Circuit on December 11, 2015, plaintiff had a suit pending against the United States at the time he filed Case Number 15-1501 in this court for the purposes of 28 U.S.C. § 1500. Loveladies Harbor, Inc. v. United States, 27 F.3d at 1548.

Comparing the complaints, including the allegations and facts alleged in plaintiff's two concurrent lawsuits in this court and in the district court, demonstrates that the operative facts meet the analytical framework set forth in Tohono O'Odham Nation. See United States v. Tohono O'Odham Nation, 563 U.S. at 311. For example:

1. In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 2, plaintiff states: "On December 15, 2000, the United States, through its agency, USPS and its agents, Nichon Perrier (Supervisor Distribution Operations) and Daryle Rocco (Acting Manager Distribution Operations) when they negligently issued a 'Notice of Suspension of 14 days or Less' for absences as a result of Plaintiffs disability asthma, in violation of article 2.1, 5, 6 of the Collective Bargaining Agreement (CBA) and the Rehabilitation Act of 1973 . . . The United States, through its agency, USPS and its agents, failed to adhere to their statutory and contractual duties and Plaintiff suffered an economic injury."

13

In comparison: In the United Stated District Court of the Western District of Michigan in Hood v. USPS, Case No. 14-1104, at 1-2, plaintiff states: "On December 15, 2000, I was denied reasonable accommodations in the form of time off for asthma. I was issued a 'Notice of Suspension of 14 days or Less' for absences based my disability asthma by supervisor of distribution operations, Nichon Perrier and acting manager of distribution operations, Daryl Rocco[.]"

2.  In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 2, plaintiff states: "On May 10, 2001, the United States, through its agency, USPS and its agents, were negligent when through Hood's treating physician, Dr. Lawrence Probes; Plaintiff requested the following reasonable accommodation: 'no more than 8 hours per day or 40 hours per week and to be transferred to P-1 Annex site' on April 23, 2001, but request went ignored."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 3, plaintiff states: "On May 10, 2001, I was discriminated against when through my treating physician, Dr. Lawrence Probes; I requested the following reasonable accommodation: 'no more than 8 hours per day or 40 hours per week and to be transferred to P-1 Annex site' on April 23, 2001."

3.  In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 3, plaintiff states: "May 10, 2001 to January 29, 2002, the agency placed the Plaintiff in a position that he does not believe was appropriate because it forced him to work outside his physician's restrictions of 40 hours per week and was denied placement at P-1 Annex work site . . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 2, plaintiff states: "May 10, 2001 to January 29, 2002, the agency placed me in a position that I do not believe was appropriate because I worked outside my physician's restrictions of 40 hours per week and was denied placement at P-1 Annex work site . . ."

4.  In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 3, plaintiff states: "On July 23, 2001, the United States, through its agency, USPS and its agents, Linda Jones (Supervisor Distribution Operations) were negligent when they issued an investigative interview concerning absences that were covered by OWCP . . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 3, plaintiff states: "On July 23, 2001, I was discriminated against when I was given an investigative interview concerning absences that were covered by OWCP . . ."

5. In the United States Court of Federal Claims, in <u>Hood v. United States</u>, Case No. 15-1501, at 3, plaintiff states: "From May 10, 2001 until July 23, 2001, the agency was negligent when they ignored the Plaintiff requests for reasonable accommodation for his disabilities (PTSD, Depression, and Anxiety) in the form of time off and adhering to his physician's restrictions 'no more than 8 hours per day 40 hours per week and being placed at P-1 Annex work site' . . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 3, plaintiff states: "From May 10, 2001 until July 23, 2001 the agency denied me reasonable accommodation for my disabilities (PTSD, Depression, and Anxiety) in the form of time off and adhering to my physician's restrictions 'no more than 8 hour per day 40 hours per week and being placed at P-1 Annex work site'."

6. In the United States Court of Federal Claims, in <u>Hood v. United States</u>, Case No. 15-1501, at 3, plaintiff states: "On August 15, 2001, the United States, through its agency, USPS and its agents, Linda Jones (Supervisor Distribution Operations) were negligent when they issued a 'Notice of Suspension of 14 days or less' to Plaintiff in connection to absences that were covered by OWCP... From May 10, 2001 until August 15, 2001, the agency was negligent when they ignored the Plaintiffs requests for reasonable accommodation for his disabilities (PTSD, Depression, and Anxiety) in the form of time off and adhering to his physician's restrictions 'no more than 8 hours per day 40 hours per week and being placed at P-1 Annex work site' . . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 3, plaintiff states: "On August 2, 2001, I was discriminated against when I was issued a 'Notice of Suspension of 14 days or less' in connection to absences that were covered by OWCP . . . From May 10, 2001 until August 2, 2001, the agency denied me reasonable accommodation for my disabilities (PTSD, Depression, and Anxiety) in the form of time off and adhering to my physician's restrictions 'no more than 8 hour per day 40 hours per week and being placed at P-1 Annex work site'."

7. In the United States Court of Federal Claims, in <u>Hood v. United States</u>, Case No. 15-1501, at 3, plaintiff states: "On September 24, 2001, the United States, through its agency, USPS and its agents, Linda Jones (Supervisor Distribution Operations) were negligent when they issued an investigative interview concerning absences that were covered by OWCP."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 3, plaintiff states: "On September 24, 2001, I was discriminated against when I was given an investigative interview concerning absences that were covered by OWCP . . ."

8. In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 3, plaintiff states: "On October 17, 2001, the United States, through its agency, USPS and its agents, Linda Jones Supervisor Distribution Operations) were negligent when they a issued another 'Notice of Suspension of 14 days or less' in connection to absences that were covered by OWCP. . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 5, plaintiff states: "On October 17, 2001, I was discriminated against when I was issued another 'Notice of Suspension of 14 days or less' in connection to absences that were covered by OWCP . . ."

9. In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 4, plaintiff states: "On December 15, 2001, the United States, through its agency, USPS and its agents, Pamela A. Bronson (Supervisor Distribution Operations) were negligent when they issued a 'Letter of Intent of Removal' in connection to absences that were covered by OWCP . . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 4, plaintiff states: "On December 15, 2001, I was discriminated against when I was issued 'Letter of Intent of Removal' in connection to absences that were covered by OWCP . . ."

10. In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 4, plaintiff states: "On January 14, 2002, the United States, through its agency, USPS and its agents, Pamela A. Bronson (Supervisor Distribution Operations) and Daryl Rocco (Manager Distribution Operations) were negligent when they issued a issued 'Letter of Removal' in connection to absences that were covered by OWCP . . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 5, plaintiff states: "On January 14, 2002, I was discriminated against when I was issued 'Letter of Removal' in connection to absences that were covered by OWCP . . ."

11. In the United States Court of Federal Claims, in Hood v. United States, Case No. 15-1501, at 5, plaintiff states: "On December 1, 2002, the United States, through its agency, USPS and its agents, were negligent when the agency improperly restored Plaintiff to a regular position, without medical restrictions. . ."

In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 6, plaintiff states: "On December 1, 2002, I was discriminated against when the agency improperly restored me to a regular position, without medical restrictions."

12. In the United States Court of Federal Claims, in <u>Hood v. United States</u>, Case No. 15-1501, at 5, plaintiff states: "On July 17, 2003, the United States, through its agency, USPS and its agents, Linda Jones (Acting Manager Distribution Operations) and Paris McHerron (Supervisor Distribution Operations) were negligent when they gave an investigative interview concerning absences that were covered under FMLA . . ."

   In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 7, plaintiff states: "On July 10, 2003, I was discriminated against when I was given an investigative interview concerning absences that were covered under FMLA . . ."

13. In the United States Court of Federal Claims, in <u>Hood v. United States</u>, Case No. 15-1501, at 5, plaintiff states: "From December 1, 2002 until September 12, 2003, the United States, through its agency, USPS and its agents, were negligent when the agency improperly restored Plaintiff to a regular position, without medical restrictions and forced Plaintiff to work overtime . . ."

   In comparison: In the United Stated District Court of the Western District of Michigan, Case No. 14-1104, at 8, plaintiff states: "From December 1, 2002 until September 12, 2003, I was discriminated against when the agency improperly restored me to a regular position, without medical restrictions and forced me to work overtime . . ."

   In light of the above, Case Number 14-1104, filed in the United States District Court of the Western District of Michigan and appealed to the United States Court of Appeals for the Sixth Circuit as Case Number 15-1937, and Case Number 15-1501, filed in this court, are evidently based on substantially the same operative facts. In fact, in both cases, plaintiff's claims are based on a nearly identical set of alleged interactions between plaintiff and the USPS. Therefore, because on the date that plaintiff filed suit in this court, December 11, 2015, his case in the Sixth Circuit was pending for purposes of 28 U.S.C. § 1500, this court is deprived of jurisdiction to hear plaintiff's overlapping claims in Case Number 15-1501. Moreover, at the time of this decision, the appeal at the Sixth Circuit is still pending according to the Sixth Circuit case docket.

   Additionally, even if plaintiff's claims in Case Number 15-1501 were not barred by 28 U.S.C. § 1500, this court lacks jurisdiction over plaintiff's claims for alleged violations of his constitutional right to due process under the Fifth Amendment to the United States Constitution in Case Number 15-1200 and in Case Number 15-1501, violations of his equal protection rights under the Fourteenth Amendment in Case Number 15-1200 and Case Number 15-1501, and plaintiff's claims for "First Amendment Violation of free Speech" in Case Number 15-1200, each of which do not mandate the payment of money. First, insofar as plaintiff alleges a violation of his rights under the Fifth Amendment to the United States Constitution, including for "late responses and/or other events presented in this complaint," the United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments. <u>See</u> <u>Crocker v. United States</u>, 125 F.3d

1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028), cert. denied, 134 S. Ct. 259 (2013)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007) ("[N]either the Fifth Amendment Due Process Clause . . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Due process claims "must be heard in District Court." Kam–Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012); see also Hampel v. United States, 97 Fed. Cl. at 238. Therefore, to the extent that plaintiff is attempting to allege due process violations under the Fifth Amendment in either Case Number 15-1501 or 15-1200, no such cause of action can be brought in this court.

This Court similarly lacks jurisdiction to hear plaintiff's claims for alleged violations of his equal protection rights under the Fourteenth Amendment to the United States Constitution. To the extent that plaintiff raises claims under the Equal Protection Clause of the Fourteenth Amendment, those claims do not mandate the payment of money by the federal government and, therefore, fall outside the jurisdiction of the United States Court of Federal Claims. See LeBlanc v. United States, 50 F.3d at 1028 (indicating that a claim under the Equal Protection Clause of the Fourteenth Amendment is not sufficient for jurisdiction in the United States Court of Federal Claims because it does not "mandate payment of money by the government." (citing Carruth v. United States, 224 Ct. Cl. 422, 445 (1980))); Potter v. United States, 108 Fed. Cl. 544, 548 (2013) (finding that "this Court lacks jurisdiction over violations under the Due Process Clauses of the Fifth and Fourteenth Amendments . . . because they do not mandate payment of money by the government.") (internal citations omitted) (modifications in original); Warren v. United States, 106 Fed. Cl. 507, 511 (2012) (holding that, since the "Fourteenth Amendment guarantee of equal protection" is not money mandating, "[a]ccordingly, the court lacks

jurisdiction over these claims."); Pleasant-Bey v. United States, 99 Fed. Cl. 363, 367 (2011) appeal dismissed, 464 F. App'x 879 (Fed. Cir. 2012) ("However, this court does not have jurisdiction over claims based on either the Thirteenth Amendment or Fourteenth Amendment because neither mandates the payment of money damages."). Plaintiff's allegations in Case Number 15-1501 and Case Number 15-1200 of equal protection clause violations under the Fourteenth Amendment to the United States Constitution, therefore, also cannot be adjudicated in this court.

This court similarly lacks jurisdiction to entertain plaintiff's claims for an alleged "First Amendment Violation of free Speech." The First Amendment to the United States Constitution, standing alone or otherwise, cannot be interpreted to require the payment of money for an alleged violation, and, therefore, does not provide an independent basis for jurisdiction in this court. See United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984) ("We agree with the Court of Claims that the first amendment, standing alone, cannot be so interpreted to command the payment of money."); Volk v. United States, 111 Fed. Cl. 313, 326 (2013); Cox v. United States, 105 Fed. Cl. 213, 217, appeal dismissed (Fed. Cir. 2012) ("However, because the First Amendment, standing alone, does not obligate the United States to pay money damages, it cannot serve as the basis for jurisdiction in the Court of Federal Claims.") (citing United States v. Connolly, 716 F.2d at 887). Accordingly, to the extent that plaintiff is attempting to allege a violation of the First Amendment to the United States Constitution in Case Number 15-1501 or Case Number 15-1200, no such cause of action can be brought in this court.

Additionally, although this court does have jurisdiction to consider allegations of a taking in violation of the Fifth Amendment to the United States Constitution, plaintiff's allegations fail to state such a claim. The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. To succeed in a takings cause of action under the Fifth Amendment, a plaintiff must show that the government took a cognizable private property interest for public use without just compensation. See Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp v. United States, 525 F.3d 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008) (citations omitted). The Federal Circuit has established a two-part test to determine whether governmental actions amount to taking of private property under the Fifth Amendment. See Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir. 1995)), reh'g en banc denied, (2004). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged taking. Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d at 1377 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

19

In Case Number 15-1501, plaintiff alleges a "regulatory and physical taking of private property" based on plaintiff's assertions that the USPS violated its "statutory and contractual requirement's imposed by the Family Medical Leave Act ('FMLA') of 1993, Federal Employee's Compensation Act ('FECA'), and the CBA [Collective Bargaining Agreement]" by accelerating "Plaintiffs wrongful termination in an effort to deprive him of his rights to life, liberty, and property (Job) to reissue it to the public. Plaintiff also claims that in April, 2004, "[b]y confiscating, depriving, and wrongfully terminating Plaintiffs employment, Defendant has taken Plaintiff's private property for public use without just compensation, in violation of the Fifth Amendment to the Constitution of the United States."

As a threshold matter, plaintiff's regulatory and physical takings claim do not allege a property interest subject to a valid constitutional takings claim.  To the extent plaintiff alleges that the property interest in question is his job with the USPS, plaintiff has not sufficiently alleged a cognizable property interest. Although the United States Court of Appeals for the Federal Circuit has recognized that a "public employee has a property interest in continued employment" when the government gives the employee certain "assurances of continued employment" or it "conditions dismissal only for specific reasons," Mr. Hood fails to specify whether he had been given such assurances from the government or to provide any evidence of such assurances. See Stone v. FDIC, 179 F.3d 1368, 1374 (Fed. Cir. 1999). Plaintiff also has not alleged that he possessed the right to dispose of, transfer, or exclude others from the USPS job. Moreover, when an employee has a property interest in his public employment, that interest is protected by the due process clause of the Fifth Amendment to the United States Constitution. Id. at 1374-75. As explained previously, this court does not have jurisdiction over claims brought under the due process clause of the Fifth Amendment. Additionally, to the extent that plaintiff's regulatory and physical takings claims alleges that the property taken was an "ability to secure gainful employment," his claims are more properly classified as tort claims, rather than Fifth Amendment takings claims.  See Howard v. United States, 21 Cl. Ct. 475, 478-479 (1990).  Therefore, plaintiff's regulatory and physical takings claims does not allege a legally cognizable property interest.

In plaintiff's second amended complaint in Case Number 15-1200 he alleges fraud and conspiracy, which are tort claims. As such, this court lacks jurisdiction to adjudicate those claims. The Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. at 214; Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over

those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. at 238; Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims. Here, Mr. Jumah seeks damages for '[n]eglect, [m]isrepresentation, [f]alse [i]mprisonment, [c]onspiracy, [i]ntentional [i]nfliction of emotional [d]istress, [i]nvasion of [p]rivacy, [n]egligence and [t]respass and [p]unitive [d]amages.' These are all claims sounding in tort." (internal citation omitted; all brackets in original)), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties' . . . [and] Plaintiffs' claims of fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, and defamation, and their claims that the Government deprived Ms. Edelmann of her right to a fair trial, are tort claims." (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Plaintiff's claims of conspiracy and fraud sound in tort, and, accordingly, must be dismissed for lack of jurisdiction.

To the extent plaintiff's fraud allegations are intended as claims of contract fraud, plaintiff has failed to properly state a claim for relief. Plaintiff alleges:

> The contract was the result of fraud, coercion, and I was under duress because of my psychiatric conditions. The contract is a result of undue influence because of the United States, through its agency, the USPS arbitrary, capricious, discriminatory, and fraudulent actions taken against me.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." RCFC 9(b) (2015). "Although 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Exergen Corp. v. Wal–Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009). "Therefore, to satisfy Rule 9(b), 'the pleading must identify the specific who, what, when, where, and how' of the alleged fraud or mistake. Kellogg Brown & Root Servs., Inc. v. United States, 99 Fed. Cl. 488, 495 (Cl. Ct. 2011) (quoting Exergen, 575 F.3d at 1328).

Plaintiff's complaint in Case Number 15-1200 alleges that defendant engaged in fraud, but plaintiff does not specifically identify individuals who he asserts committed such fraudulent conduct. Plaintiff's complaint narrates an alleged story of fraud committed by multiple actors, but plaintiff does not sufficiently allege underlying facts for this court to understand which, if any, of the government's actions mentioned in plaintiff's complaint were committed with the requisite state of mind. Accordingly, to the extent plaintiff's allegations allege contract-related fraud, Mr. Hood's complaint fails to sufficiently plead fraud in accordance with RCFC 9.

Finally, although plaintiff also asserts an array of breach of contract claims in Case Number 15-1200 and Case Number 15-1501, including breach of the Settlement Agreement, breach of an implied-in-fact contract, breach of common law promissory estoppel, breach of an implied covenant of good faith and fair dealing in regards to the Settlement Agreement, breach of the promise to accommodate, and breach of the implied covenant of good faith and fair dealing for failure to provide equal treatment in the workplace, defendant properly points out that the contract claims alleged by plaintiff appear to be time-barred pursuant to 28 U.S.C. § 2501. In reviewing both Case Number 15-1200 and Case Number 15-1501, defendant argues that the government's alleged breaches of contract occurred between December 2000 and September 2008. Consequently, defendant asserts that plaintiff's contract claims in Case Number 15-1501 and Case Number 15-1200 are time-barred because all of the relevant events allegedly constituting breaches occurred more than six years before plaintiff filed his two complaints on October 15, 2015 and December 11, 2015.

Suits against the United States are subject to a six-year statute of limitations. According to the statute at 28 U.S.C. § 2501:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . . A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues ""'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money."'" San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1358-59 (Fed. Cir.) (quoting Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004))), reh'g en banc denied (Fed. Cir. 2011); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Martinez v. United States, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events

have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), motion denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); see also Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied 133 S. Ct. 1645 (2013). A Judge of the United States Court of Federal Claims has noted that:

> It is well-established that a claim accrues under section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)); see also Samish [Indian Nation v. United States], 419 F.3d [1355,] 1369 [(2005)]. Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.), cert. denied, 526 U.S. 1117 (1999); see also John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

Parkwood Assocs. Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813-14 (2011), aff'd, 465 F. App'x 952 (Fed. Cir. 2012); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. at 209 (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)). Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)).

Although the accrual of a claim pursuant to 28 U.S.C. § 2501 may, in certain limited scenarios, be suspended "until the claimant knew or should have known that the claim existed," Holmes v. United States, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (quoting Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008)), plaintiff's alleged "[i]gnorance of rights which should be known is not enough" to suspend the accrual of a claim. Braude v. United States, 585 F.2d 1049 (Ct. Cl. 1978) (quoting Japanese War Notes Claimants Ass'n v. United States, 373 F.2d 356, 358-59 (Ct. Cl. 1967) cert. denied, 389 U.S. 971 (1967)). Rather, the accrual suspension doctrine is "'strictly and narrowly applied,'" and the accrual date of a cause of action will be suspended in only very limited circumstances: "[the plaintiff] must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." See Martinez v. United States, 333 F.3d at 1319 (quoting Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985)); see also Alliance of Descendants of Tex. Land Grants, 37 F.3d 1478, 1482 (Fed. Cir. 1994);

Catawba Indian Tribe v. United States, 982 F.2d 1564, 1571-72 (Fed. Cir. 1993); Holmes v. United States, 657 F.3d at 1317; Welcker v. United States, 752 F.2d at 1580; Japanese War Notes Claimants Ass'n v. United States, 373 F.2d at 359.

Based on a liberal construction of plaintiff's pro se pleadings, in Case Number 15-1501, plaintiff's factual allegations span the time frame of December 15, 2000, when the USPS allegedly issued plaintiff a "Notice of Suspension of 14 days or Less," through August 21, 2008, when a USPS agent allegedly delayed processing requested information from OWCP. In Case Number 15-1200, plaintiff's breach of contract allegations span the time frame of August 28, 2006, when Lee Bosch allegedly sent correspondence to OWCP stating that plaintiff's employment was terminated, through September 8, 2008, when Theresa Miller allegedly sent a CA-7a Time Analysis Form to OWCP stating that plaintiff was terminated from employment.

Plaintiff's argument that his claims are subject to equitable tolling also is to no avail. The United States Supreme Court and the United States Court of Appeals for the Federal Circuit have held that equitable tolling is not available in Tucker Act cases. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134 (2008); Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008). In John R. Sand & Gravel Co. v. United States, the United States Supreme Court articulated that the six-year limitations period in 28 U.S.C. § 2501 is jurisdictional in Tucker Act cases, "and not susceptible to equitable tolling." John R. Sand & Gravel Co. v. United States, 552 U.S. at 755.

Although 28 U.S.C. § 2501 does not provide for equitable tolling, tolling for persons with a "legal disability" can be recognized, but this does not save plaintiff's claims based on the facts presented in plaintiff's complaints in either Case Number 15-1501 or Case Number 15-1200. Section 2501 provides, in pertinent part:  "A petition on the claim of a person under legal disability . . . at the time a claim accrues may be filed within three years after the disability ceases."  As stated in Goewey v. United States, "[t]he law presumes sanity and competency rather than insanity and incompetency." Goewey v. United States, 612 F.2d 539, 544 (1979). Accordingly, the plaintiff bears a heavy burden in demonstrating the existence of a disability. Id. "[I]n order to qualify as a statutory 'legal disability,' the [incompetency] must in some way prevent [the plaintiff's] comprehension of his legal rights." Id. at 544. Only a "serious impediment can qualify to suspend the running of the statute." Id.

In the present case, plaintiff has not alleged that defendant concealed the actions which form the basis of the breach claims, or that information regarding the alleged breaches was inherently unknowable. Plaintiff alleges that, "I only discovered the breaches after I filed an appeal with the U.S. Merit System Protection Board [MSPB] and requested my DOL OWCP records, it was only then did I discover that the agency breached the agreement after reviewing my file with clarity." Plaintiff requested the DOL OWCP records in December 2013, and his appeal before the MSPB was dismissed in April 2014. Plaintiff also asserts that he has been "under a legal psychiatric disability since 2000 for post-traumatic stress disorder, major depression, and anxiety." Plaintiff asserts that in 2007, he was diagnosed with "psychiatric retardation and alcohol abuse."

Moreover, plaintiff claims that he continued to take high doses of psychiatric medication and abuse alcohol until 2013.

Plaintiff alleges that he was not aware of his claims until, as part of his MSPB appeal, he participated in a conference call with Judge Puglia of the United States Merit Systems Protection Board and he requested his records from the Department of Labor Officer of Workers' Compensation Program. Plaintiff has not alleged that these records were unavailable, or that he could not have accessed them, prior to December 2013. Rather, the record suggests that the documents which plaintiff alleges contain various breaches of the Settlement Agreement were readily available and that he received them upon request.

Although the unlabeled medical documents submitted to this court by plaintiff, as an attachment to his complaint in Case Number 15-1200, suggest various medical issues, plaintiff's complaint falls short of sufficiently asserting or establishing an inability by plaintiff to comprehend his legal rights during the relevant statute of limitations time period. Because the law presumes sanity and competency, plaintiff bears the heavy burden of overcoming this presumption. See Goewey v. United States, 616 F.2d at 544. Even a document that plaintiff submitted to the court, labeled as a physician's initial exam and purportedly a medical record, states that, as of November 14, 2007:

> There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content is appropriate. Cognitive functioning and fund of knowledge is intact and age appropriate. Short and long term memory are intact. This patient is fully oriented. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into illness is normal. Social judgment is fair. There are no signs of anxiety. There are no signs of hyperactive or attentional difficulties.

Plaintiff has not alleged sufficient facts to determine that he suffered from an alleged disability in 2004 when he was removed from his job at the USPS, or since that date. Because plaintiff alleges that the USPS committed multiple breaches of the Settlement Agreement beginning on August 28, 2006 at the latest, plaintiff's claims should have been filed on or before August 28, 2012, because the statute of limitations began to run on August 28, 2006, "as soon as all events ha[d] occurred that are necessary to enable the plaintiff to bring suit." Martinez v. United States, 333 F.3d at 1303.

Furthermore, "[t]he general rule is that after the termination of a legal disability the statute of limitations commences to run and the tolling is not reinstated by a recurrence of the disability." Goewey v. United States, 612 F.2d at 546. Even assuming that plaintiff at one time suffered from a legal disability, the unlabeled documents submitted by plaintiff indicate that the disability did not exist on November 14, 2007. Once the legal disability ceases to exist, a plaintiff must file a claim within three years thereafter. See 28 U.S.C. § 2501. Therefore, even if plaintiff's disability terminated on exactly November 14, 2007, then, if his disability reoccurred later, the statute of limitations would have continued to

run. Assuming plaintiff had a disability in 2006 when the claim would have otherwise begun to accrue, plaintiff's cause of action would have expired before either complaint was filed in this court in 2015. Plaintiff's many causes of action, including the alleged contract claims, raised by plaintiff in Case Number 15-1501 and Case Number 15-1200 are untimely and, thus, barred from this court's consideration.

Finally, as explained above, Mr. Hood has filed no less than three cases in this court asserting the same or similar allegations: Hood v. United States, 1:15-cv-01158; Hood v. United States, 1:15-cv-1501; and Hood v. United States, 1:15-cv-1200; and a fourth case was sent as a transfer case to this court on May 12, 2016, Hood v. United States, 1:16-cv-00570 (May 12, 2016), although no transfer complaint has been filed in this court as of the issuance of this decision. In addition, as cited above, Mr. Hood has filed at least 16 other, related cases across the federal judiciary system. RCFC 11 grants this court the authority to impose sanctions on parties who file frivolous or baseless pleadings. The court may impose RCFC 11 sanctions "in an effort to preserve judicial resources and deter the filing of frivolous lawsuits." Kissi v. United States, 493 F. App'x 57, 59 (Fed. Cir. 2012). RCFC 11 states that sanctions should be limited to what is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," and permits the imposition of nonmonetary sanctions. RCFC 11 requires that, by filing a complaint in this court, the plaintiff represents that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for the establishment of new law." RCFC 11(b)(3). Mr. Hood's complaints in this case include allegations that are not warranted by existing law and Mr. Hood does not put forth a nonfrivolous argument for extending, modifying, or reversing well-established existing law that is controlling on the claims presented in his complaints. Mr. Hood has been informed on multiple occasions by other federal courts that his claims are time-barred or otherwise fatally flawed. Plaintiff's purpose in continuing to file complaints putting forth the same allegations, therefore, is frivolous and wastes valuable court resources. Therefore, the appropriate sanction in this case is to bar plaintiff from filing any future complaints in this court without an order from a judge of this court approving such a filing. See Bergman v. Dep't of Comm., 3 F.3d 432, 435 (Fed. Cir. 1993) (barring the filing of future appeals by plaintiff without judicial review and approval of the appeal after referral to a judge for screening); Kissi v. United States, 493 F. App'x at 59; Aldridge v. United States, 67 Fed. Cl. 113, 124 (2005) ("Plaintiff is further ORDERED to cease filing any further action related to Plaintiff's eviction from the Property in the United States Court of Federal Claims. The Clerk of the Court is directed to accept no filing from Plaintiff, without an Order of the court approving the filing."); Hornback v. United States, 62 Fed. Cl. 1, 6 (2004) ("To prevent abuse of the judicial process by plaintiff," the court barred future filings by plaintiff "absent advance written permission by a judge of this court." (emphasis added)), aff'd, 405 F.3d 999 (Fed. Cir.), reh'g en banc denied (2005); Anderson v. United States, 46 Fed. Cl. 725, 731 (2000) ("The clerk of the court is further directed not to file any pleadings or documents of any kind, submitted by plaintiff in this court, without the advance written permission of a judge from this court."), aff'd, 4 F. App'x 871 (Fed. Cir.), cert. dismissed, 533 U.S. 926, reconsid. denied, 534 U.S. 809 (2001).

## CONCLUSION

For all the reasons discussed above, plaintiff's vexatious complaints in Case Number 15-1200 and Case Number 15-1501 are **DISMISSED**. Plaintiff shall not file additional complaints arising from the same facts in Case Number 15-1200 and Case Number 15-1501 in this court without first obtaining leave of a judge of this court.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**